Please call the next case. 5-14-0257, Consolidation Coal Co. v. Workers' Compensation Comm'n Hi, police report. My name is Sherilyn Trevaya. I'm here representing Consolidation Coal Co. Mr. Trevaya, you should know this is Mr. Resor's fifth argument today, so he's been considerably softened up for you. He might be worn out a little bit, so take it easy on him. He's going second. He's already got the advantage. We've already had this covered today. We've already discovered he's in the expert seat. We know that. This case is an appeal of a 19-H petition that was filed. The original case, Cyril Smothers, actually came up to this court. The hearing was in August of 2005. The arbitrator awarded 30% man as a whole. The commission took a look at it and said, nope, 75% man as a whole. We appealed it up to this, and it eventually got affirmed in March of 2009. Following that decision, Consol issued a check, and in September of 2009, Mr. Cyril Smothers filed his 19-H petition saying that his condition had now worsened. Can I ask a question on this case? Absolutely. This case just befuddled me. Okay. The commission gave him 75% of a man as a whole. He files a 19-H and says, now I'm a permanent total. Your defense is he shouldn't have gotten 75% of a man as a whole. He was a permanent total the last time. Is that what this case is about? Is that your argument? At least part of it, I think. That's your whole argument. The argument you're on, well, the first argument, we can't even get to that until we get to the standard of review, which there was a question as to whether it was clearly erroneous or if it was a manifest way. Clearly erroneous does not apply to workers' compensation cases. The Supreme Court has decided two cases after City of Belvedere. City of Belvedere gave us clearly erroneous for whatever reason, heaven only knows, as opposed to de novo on law, manifest way on facts. And it only applies to administrative review actions. But in two cases subsequent to City of Belvedere, the Supreme Court had occasion to review workers' compensation cases. They did not apply clearly erroneous. They applied de novo to the law and manifest way to the facts. I thought the Darrow came out after that in 2010. At any rate, manifest way. Go on manifest way and tell me. I don't understand the argument. Well, the problem we have here is that basically we have a commission, we have a statute that says a material or substantial increase in disability since the first hearing. The first hearing in this case was in August of 2005. The evidence and what the commission has made their ruling as a finding of him now being totally disabled is a comparison of 2001 and 2009 or 2002 and 2009, which does not encompass what the statute requires. So it becomes a question of law as to whether we're going to go with what the statute says, which is what was at the hearing, or if we're going to go as far back as we want. And in this case, we have medical evidence that goes all the way back to 1996 before he even left the mine. We have him leaving in 2000. We have him getting Social Security disability benefits in 2000. We have a continual set of facts of when was he disabled or totally disabled, how do you get more disabled if you were already totally disabled, and the evidence in this case basically shows that even their expert, Dr. Hauser, says we think he was disabled in 2003, or I think he was disabled in 2003. Let's get some basic facts. He has his original hearing. The commission decides that he's disabled to the extent of 75% of a man as a whole. You appeal that. On October the 9th, 2009, we affirmed it. He's 75% of a man as a whole as of his arbitration hearing. Now you want to go back and say, oh, no, he wasn't 75% of a man as a whole, he was actually permanently and totally disabled, and therefore because he's only permanently and totally disabled today, he has no increase in disability. You cannot argue against the earlier decision. He was 75% as a man as a whole. What is he today? He's permanent, right? According to the commission, he is, but I don't see how you can be worse if your numbers are better, and if your objective medical data shows that your pulmonary function studies have improved. Your testimony at the hearing is nearly identical. You testified at the first hearing, I couldn't go on vacation. Well, amazingly, this time he can go to Alaska. Everything he testified to, there's supposed to be a substantial material change in the condition. And in all honesty, Your Honor, if you want to say he's 75% man as a whole, then he's still 75% man as a whole, because the evidence does not support a finding that he is worse than he was at the first hearing. But is there evidence in the record that he's a permanent total? There was evidence at both hearings saying that he was permanently and totally disabled. Is there evidence in the record of the 19-H that he's a permanent total? Yeah, Dr. Hauser testified that he would have been permanently and totally disabled in 2003. Did Hauser say anything about him being able to perform sedentary work? The problem we got into with this case, Your Honor, is that there was a federal black loan case that was filed as well. And so in federal black loan, you have a different level to find total disability. In the 19-H proceeding, Dr. Hauser testified that basically once you got below 40% of predicted on your FEV1, which was the number being used to determine the severity of his obstructive condition, you would be permanently, totally disabled. And what we put in here was a table of all of his FEV1s from 1998 until 2010. And the worst value we have before the first hearing, in August of 2005, is still higher or no worse or no better than what we have now. Essentially, his values in 2004 were 22% of predicted, 21% of predicted after bronchodilator. And in 2010, they're at 29% and 28%. So you're saying the objective medical reports, tests and findings put him, this is the time he was at the original ward. That's your position, right? Our position is that he is no worse now than he was in 2005. And the objective evidence shows that he's actually better. And his own testimony does not show that he's any worse. In fact, the only testimony that he gave that would indicate a substantial, not even a substantial, just an increase in his disability, was he testified that he could walk 150 yards before and 150 feet now. That's what it was. It was a 300 to 100 split. That was his subjective testimony. There is no objective testimony to show that he is any worse off. In fact, the evidence shows that he is not. I mean, if you look at what he testified to, his testimony was nearly identical. So we have objective data that specifically shows him no worse than he was before. What about Hauser? Did he testify he was worse than he was before and couldn't do any work? He said he was worse than 2001. So we get back to the same problem. So he's contradicted by, you're saying, the objective medical evidence, Hauser. He's not contradicted by it at all. The problem we have is we have a statute that says it's the difference between the date of the hearing, which is 2005, not 2001. And all of the evidence that's relied on by the commission is 2001 and 2002. You know, you have a great argument if you were at liberty to impeach the original decision, and you're not. But I'm not impeaching the decision if the decision says that he's at 75 when he is this bad. Hold on, hold on. And he's no worse. He should still be 75. But Hauser says he's permanently, totally disabled. Hauser said that in the first case, too. He may very well have, but this commission didn't buy it then. This time they did. He was 75% then. Hauser says he's permanently, totally disabled now. And so you can't impeach the first 75%. In order for your argument to win, you have to impeach the first decision. You have to establish that he was permanently and totally disabled then, and you can't do it. I'm not impeaching the first decision. He was awarded 75%. That's right. However, the objective evidence in this case does not support a finding that he is any worse than he was before. Is permanent total worse than 75%? Of course it is. That is the finding of the commission, and that is what I'm asking this court to look at. The fact that Dr. Hauser thought he was permanently, totally disabled the first time and the second time doesn't show a material or substantial change in condition from the first hearing, which is exactly what the statute requires to show. But permanent total is worse than 75% of the man as a whole. There's a difference between the two. They're not the same. I know, Your Honor. And the worst is permanent total. That's correct. Hauser specifically said when he examined him in August of 2009, he was a permanent total. He could not work. And if you can't impeach the 75% and there's evidence from Hauser, I don't see how you can come to the conclusion that there hasn't been a change. You can say objective evidence is all you want. I understand what your argument is. He should have been a permanent total back in the first time. No, I'm not saying he should have been a permanent total the first time. What I am basically saying is that Dr. Hauser, who you're relying on to say he's now permanently disabled, said he would have been disabled in 2013. And I'm asking you to look at that in light of what the statute requires. There has to be a change from the first hearing. What you're saying, semantically, you can't have evidence of change when the evidence is the same evidence you had before. Well, exactly. And the problem you get into is that, I mean, you have objective evidence, which are the numbers, which we put out in a table which they didn't care for, that the table was based on Dr. Hauser, their expert's testimony, that says when you get below this, you're permanently and totally disabled. And that's what it was. Well, let's go back to where I was going semantically. How do you get to that? I'm sorry. Thank you. What you're saying, the evidence is insufficient when you have an opinion that in 05, Condition A is the same now as it was in 05. There's no change, so to speak. And so, if anything, Hauser's impeaching the 05 decision because the 05 decision didn't find what Hauser claimed was the condition of the claimant in 04-05. Am I correct? That is correct, Your Honor. So who's impeaching the decision? Your opponent or you? I'm impeaching the decision because the objective medical data shows that his pulmonary function study values, which is what the entire thing is based on. The entire obstructive condition is based on the FEV1 value, okay? And if you're going to say, okay, he's at 22% of predicted at the first hearing, and that's worth 75% man as a whole, then how do you get to a permanent total, which is worse, which, as you have very clearly pointed out, is worse than 75% man as a whole? Do you get there if his numbers have improved? Well, I don't know how you get there if his numbers improve, but the Supreme Court has said that findings cannot be re-litigated or called into question in a 19-H proceeding. They are considered final, and re-litigation is barred under the document of res judicata. It was 75% after the first hearing. He's now a permanent total. I think there's a disconnect here. I don't think you're arguing that. You're just saying we're talking about point A was 75, and now at point B the commission is finding he's total. Yes, that's correct. So you're not trying to suggest at point A it was total. No, I'm saying that the decision to find him permanently and totally disabled now after finding him 75% based on this evidence does not stand up because it is not a substantial increase in his disability. And if you look at the objective numbers, and you look at his testimony as to what he said or he could and couldn't do at the first hearing as well as what he testified at the second hearing, there is not a level of material or substantial increase in disability to award more than the 75%. That's it. His testimony as to only that element would be the difference between his ability to walk in 2005 and his ability to walk today. That is the only thing that I have. Now, I have a question for you. Yes, sir. Westerfield found that the claimant was totally and permanently disabled now. Is that correct? That's correct. And Hauser found that he was permanently and totally disabled now. That's correct. And they found that based on the same facts that were presented to the commission back when they found 75%, right? That's correct, Your Honor, but I can't impeach the previous decision. That's right, you can't. So the previous decision he was 75%, but that doesn't make him 75% today because Hauser testified based upon August 2009 examination, did he not, and said permanently. So I don't know how you get around impeaching the first decision. I'm not trying to impeach the first decision. I'm simply saying that if his numbers and the severity of his condition warranted 75% man as a whole in 2005, which this court affirmed and the commission awarded, if his numbers have not decreased, his disability has not increased, and his testimony as to whether or not his condition is different has not changed substantially, then I don't think the burden has been met. Are there any other questions? No. Thank you. May it please the Court, my name is Bruce LaSore and I represent the Sterling Smothers. What has changed in Hauser's, I mean apparently Hauser said, hey, it's totally back in 2005 and the commission was wrong because they said 75% and now it's still totally. I mean is there anything new that Hauser has uncovered that would suggest to be persuasive to the commission? He could have uncovered the heart of the new commission and persuaded them. Is that a legal basis? I haven't been able to do it all the time, but it can be done. I agree with what I've heard so far this afternoon and that is that whatever the evidence was leading up to the 2005 decision, it resulted in a 75% award. So we know as a matter of law he was 75% disabled on that day. The commission then, there was new testing and there were new opinions and not just Dr. Hauser, Dr. Tudor as well as Dr. Westerfield and the commission took all that into account and said now he's totally disabled. Well how could they do that if opponents correct on these numbers on the subject of testing? Well, the testing, the second set of testing showed some worse numbers and there's definitely evidence in the depositions that he has had a material worsening. What is that evidence? Is it just the walking? Is it just the diminished distance I can walk? Well that would be part of it, that would be part of it. I guess I go back to this other question. If I know he's disabled as 75% of the man in 2005 and the commission now looks rationally at these three doctors, two of them being for consult and they say he's totally permanently disabled and the commission finds he's totally permanently disabled by the virtue of the two decisions I know he's had a worsening condition. Now lots of times I don't agree with what the commission decides, however they decide it. And this one's in the books. He was 75% at the time of the original award, which he is saying is accepting that the objective pulmonary function testing does not show an increase in the disability. How do you answer that? Mr. Wessor, Dr. Westerfield found based on a review he conducted in July 18th, pardon me, he conducts a review in February of 2010. He's deposed and he says claimant's pulmonary function has decreased since 2005. And then he was asked what's the difference and he said well it's partly lung cancer but it's also has to do with his emphysema so it's both. Westerfield actually testifies that there's a decrease in function, although he believed the guy was totally disabled in 2005 also. I don't know if he was as strong. As I go back and try to remember, I think there is some question whether he could still do light duty by Dr. Westerfield. However, there's no question that now he says he's totally disabled and Westerfield is Consal's witness. He's Consal's doctor. I don't see, as I look at the testimony, I don't see how he's not totally disabled now. Now, if I were standing here in 2005, I would say I don't see how he's not totally disabled now too then, but the court corrected me. Perhaps you can say something about what changed between the time of the original award and now it shows the decrease, or the increase in his disability. What specific factors? Yeah, the doctors have said it, but it has to be attached to some medical testimony, evidence, something. So what is that something? I would say it was the new depositions of the doctors, the new reports they put in, as analyzed by the commission, fully being aware of the 75% award that they had in 2005, and coming to the conclusion that now this man, this many years later, is totally disabled. Including Westerfield, there was some objective medical evidence to support that. Is that what you're telling us? I'm sorry, could you repeat that? There's some objective medical evidence to support that finding. I think there was, but most importantly, whether I did or not, I think that the commission gets to make this call. They made this call. It was rational. He's totally disabled now. The argument that Consal's making is, as I understood reading the brief, it changed a little bit up here today, but they're arguing, oh, he was totally disabled on the 2001 and 2002 testing, and he was totally disabled in 2005, so there's no worsening condition. Well, I raised the issue because that's the way I read their brief also. I didn't read their brief to say he's 75% today because he's no different than he was then. Their argument was he was totally disabled way back when, even though the commission said 75%, we affirmed it, and today he's totally disabled. Yes. In the brief, they took out the 2001 and 2002 testing, said, hey, he was totally disabled then. One of the things I was going to say is you can't take that evidence out. The door was closed on that evidence in 2005. Well, aren't they really saying that the evidence has not changed? Has not changed. I mean, in fact, I think I heard that some of the numbers are better. I would take a look at those numbers very carefully, Your Honor. I can't cite them for you. Quote them now. It's my fifth argument today. The cases kind of blend together, but as I recall the testimony, Dr. Tudor said there's a worsening condition. He's totally disabled. Westerfield was the one that said it's a worsening condition. He says his pulmonary function is worse now than it was in 2005. And I think if there's evidence in the record, best evidence in the record, it supports the total disability now. Well, couldn't the commission in 2005 have, based on Westerfield's testimony at that time, that he could do sedentary work, say he's not totally disabled? But now Westerfield, the same doctor, is that right, is saying he is totally disabled. Absolutely. Absolutely. I mean, just on that one doctor's opinions, they could decide we're going to rely on that. That's my point. That's why we did 75% before. This is why we're doing permanent total now. Right. He found that change, and it is considered a material change by the commission, and that's their call to make. That essentially is my argument. I'm happy to continue to answer these questions. If there are any others, I would like to. Otherwise, I would. I don't think there are. I would ask that you affirm the decision of the commission. Thank you. Thank you, counsel. Counsel may reply. Correct me if I'm wrong, but it sounds to me like the only thing that we can hang our hats on to affirm the commission's award is Dr. Westerfield's opinion. Is that where we're at now? Because if we look at the commission decision, they found that his opinion was actually problematic. So now we have an internally inconsistent opinion to be the only basis for increasing disability. What about Hauser? Dr. Hauser's opinion is based between 2001 and 2009. He said there was a material worsening of condition. Yes, in 2001, his numbers were way up there. They're not what they were at the hearing. Again, we have the problem of the statute requiring what the condition was at the hearing. And the objective data is in the record that shows what his values were at the hearing. And at the hearing, it was 22% in August of 2004, which is the closest one we have. After that, the values go back up again. And now we end up with the most recent values in the 19-H petition being higher than the last values at the 2005 initial hearing, which was sufficient to award 75%. You did argue in your brief, however, that he was actually a permanent total back in 2003, didn't you? I argued that that's what Dr. Hauser testified to. He was asked to extrapolate the data out from 2001 as to determine when he thought that Mr. Smothers would have been totally disabled, and he said November of 2003. He looked at Dr. Tudor's data from 2002 and came to the same conclusion that it was November of 2003. And when you look at the actual objective data in the record and Dr. Hauser's qualifying statement that the FEV1 value needed to be below 40% of predicted, he was correct. He was actually totally disabled. But they did not put any weight in Dr. Hauser's testimony because they said it was speculative. But if you actually look at it with the objective data, it actually matched up. Now, is that to be an argument that says he was totally disabled before? I mean, it's the evidence that's in the record. I mean, I live in a world where the evidence is good, the evidence is bad. You get it all, and that's what it said. I mean, basically Dr. Hauser in the 19-H hearing testified that Mr. Smothers was totally disabled in 2003. But also testified he was totally disabled at the time of the 19-H. Yes, he said that as well. And we live in a world where we can't attack cases that are already over. Well, no, we can't attack the decision that was already made. However, the statute does require this court to make a finding that Mr. Smothers' condition is worse than it was at 75% man as a whole. And based on the objective data in this case, it is not. And based on his own testimony, it is not, except that he can only walk a shorter distance. And if there's no other questions, that's all I have, Your Honors. Thank you, Counsel Bowles, for your arguments in this matter. We'll be taking under advisement a written disposition shall issue. The court will stand in recess until 9 a.m. tomorrow.